OPEN LCR.COM, INC., a Delaware corporation, Sharp Corporation, a foreign corporation, and Sharp Electronics Corporation, a New York corporation, Plaintiffs,

v.

RATES TECHNOLOGY, INC., a New York corporation, Defendant.

No. Civ.A. 00-WY-631-CB.

United States District Court, D. Colorado.

Aug. 31, 2000.

Tucker K. Trautman, Dorsey & Whitney, Denver, CO, for plaintiff.

James Hicks, David Warren, Arnold & Porter, Denver, CO, for defendant.

## ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

BRIMMER, District Judge.

Plaintiffs OpenLCR.com, Inc., Sharp Corporation, and Sharp Electronics Corporation bring this action against Rates Technology, Inc. ("RTI") seeking a declaration of noninfringement and/or unenforceability and invalidity of various patents held by RTI. Plaintiffs' Amended Complaint also alleges attempted monopolization in violation of 15 U.S.C. § 2, and state law causes of action for intentional interference with contractual relations and prospective business advantage. The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, 1338, 1367, and 2201(a).

Currently pending before the Court are two separate motions to dismiss by RTI. The first seeks dismissal for lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process pursuant to Rules 12(b)(2), (3), (4), and (5) of the Federal Rules of Civil Procedure. RTI's second motion seeks dismissal of Plaintiffs' antitrust and state law causes of action pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Having considered the parties' briefs and oral arguments, and being fully advised in the premises, the Court hereby **FINDS** and **ORDERS** as follows:

### *Background*

OpenLCR is a Colorado corporation that develops and implements a technology known as least cost routing ("LCR") used in telephonic devices such as fax machines and telephones. LCR automatically selects the least expensive long-distance rate each time the user makes a long-distance telephone call. Sharp Electronics Corporation, a wholly owned subsidiary of the multinational Sharp Corporation, is engaged in, among other things, the manufacture and sale of fax machines. Defendant RTI, a

Delaware corporation [1] with its principal place of business in Hauppauge, New York, owns several patents relating to LCR technology.

According to allegations in the Amended Complaint, as early as 1987 one of OpenLCR's founders participated in the invention of a technology for routing calls from a telephone device to selected low-cost carriers. This technology, known as "Alpha–LCR," employs algorithms, loaded into a telephonic device, which pre-determine the routing of calls to selected carriers whose rate is lower for the day and time of each outgoing call. Alpha–LCR technology has been used commercially in Japan since approximately 1990. Sharp Corporation began using the technology in telephones it sold in Japan beginning in August 1992.

In October 1978, Gerald J. Weinberger, now president of RTI, received U.S.Patent No. 4,122,308 (the "'308 Patent") broadly disclosing LCR technology to be used with telephone devices. The '308 Patent expired in October 1995. In August 1994, as the protection period on the '308 Patent neared its end, Weinberger filed two more narrow patent applications on LCR technology. Although Weinberger cited the '308 Patent technology in both applications, he did not disclose the Alpha–LCR technology to the United States Patent Office. On or about June 13, 1995, the Patent Office issued U.S.Patent No. 5,425,-085 entitled "Least Cost Routing Device For Separate Connection Into Phone Line" in the name of Weinberger and another individual as the inventors (the "'085 Patent"). On May 21, 1996, the Patent Office issued U.S.Patent No. 5,519,769 entitled "Method And System For Updating A Call Waiting Database" in the name of Weinberger and another individual as the inventors (the "'769 Patent"). The '085 Patent discloses and claims a specific LCR device to be used between a telephone and

the local telephone network—i.e., between the telephone and the wall jack. The '769 Patent discloses and claims a specific method for updating, when necessary, LCR billing rate parameters in a rating device. RTI is the assignee of both the '085 and '769 Patents.

In October 1999, OpenLCR contracted with Sharp to develop and market facsimile machines using OpenLCR's expanded version of the Alpha–LCR technology previously used in Japan. OpenLCR entered into a similar agreement with Casio Communications, Inc. (Casio) in January 2000. Casio intended to use OpenLCR's Alpha–LCR technology in an upcoming line of cordless telephones and answering machines.

Shortly after the public announcements of these business relationships, RTI, through Weinberger, began communicating with OpenLCR, the Sharp entities, and Casio claiming that OpenLCR's technology and products using that technology infringe on one or more claims of the '085 and '769 Patents. Plaintiffs responded to these communications by informing RTI that the OpenLCR's technology was based on the Alpha–LCR technology that had been in use in Japan since approximately 1988, well before Weinberger filed applications for the '085 and '769 Patents. Plaintiffs also made numerous requests for meetings with RTI to discuss issues relating to the alleged infringement and the validity of the RTI Patents in light of the earlier Alpha–LCR technology.

RTI refused to meet with Plaintiffs to discuss the validity of the '085 and '769 Patents, and threatened litigation unless OpenLCR agreed to enter into a license agreement. Over an approximately six-month period, from October 1999 through March 2000, Weinberger sent at least eight demand letters and made over fifty telephone calls to OpenLCR in Colorado.

---

1. The Plaintiffs incorrectly identified RTI as a New York corporation in the caption of their

Amended Complaint.

He threatened to "shut [OpenLCR's business down," bring a "$100 million" patent infringement lawsuit against OpenLCR in New York, and contact the Sharp entities and Casio, who Weinberger predicted would cease doing business with OpenLCR. (Gallenstein Aff. ¶ 6.) RTI also contacted Casio to explain its intent to sue OpenLCR and the Sharp parties, and to inform Casio that it too would be sued unless it agreed to enter into a license agreement with RTI.

On March 24, 2000, OpenLCR brought suit in this Court against RTI seeking a declaration of noninfringement and invalidity of the '085 and '769 Patents. Five days later, on March 29, 2000, RTI filed a patent infringement action against OpenLCR and the Sharp parties in the United States District Court for the Southern District of New York. On May 5, 2000, RTI voluntarily dismissed the New York lawsuit in its entirety and then refiled the case in the United States District Court for the Eastern District of New York. RTI's Amended Complaint in the Eastern District of New York alleges a single cause of action for infringement of the '085 and '769 Patents, and names as defendants Sharp Document & Network Systems of America, Sharp Electronics Corporation, Sharp Corporation, and Home Shopping Network, Inc.

On April 7, 2000, approximately one month before RTI dismissed and then refiled the New York lawsuit, OpenLCR, joined by the Sharp parties, filed an Amended Complaint in this action. In addition to the declaratory relief, the Amended Complaint accuses RTI of attempted monopolization of the market for LCR technology and products using that technology, intentional interference with the OpenLCR–Sharp contract, intentional interference with the OpenLCR–Casio contract, and intentional interference with prospective business advantage. The Amended Complaint alleges that RTI's actions disrupted OpenLCR's performance of the Sharp and Casio contracts and caused OpenLCR to suffer a loss of profits.

RTI now moves to dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process, and to dismiss the Sharp parties under the "first-to-file" rule. RTI also moves to dismiss Plaintiffs' antitrust and state law tort claims for failure to state a claim upon which relief can be granted. The Court shall address each motion in turn.

### *Analysis*

**A. Defendant's Motion to Dismiss Pursuant to Rules 12(b)(2), (3), (4) and (5), and the First-to-File Rule**

**1. Personal Jurisdiction**

Plaintiffs bear the burden of establishing this Court's personal jurisdiction over RTI. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 456 (10th Cir.1996) (quoting *Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984)). Where, as in this case, the issue is decided before trial on the basis of affidavits and other papers, and without the benefit of an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction. *Id.*

The Federal Circuit has exclusive jurisdiction over appeals from the district courts involving claims arising under the patent laws. *See* 28 U.S.C.A. §§ 1295(a), 1338(a) (West 1993). In a patent case, when analyzing personal jurisdiction for purposes of federal due process, district courts apply the law of the Federal Circuit. *See Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.,* 148 F.3d 1355, 1358 (Fed.Cir.1998); *Akro Corp. v. Luker,* 45 F.3d 1541, 1544 (Fed.Cir.1995). "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." *3D Sys., Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1376–77 (Fed.Cir.1998).

For the first step of the analysis, the Court turns to Colorado's long-arm statute, which establishes personal juris-

diction over defendants who, either in person or by an agent, engage in various activities within the state including the transaction of business and the commission of a tortious act. *See* Colo.Rev.Stat. § 13-1-124(1)(a) – (b) (1999). Under Colorado law, this Court may exercise personal jurisdiction to the full extent of the due process clause of the Fourteenth Amendment. *See Dart Int'l, Inc. v. Interactive Target Sys., Inc.,* 877 F.Supp. 541, 543 (D.Colo. 1995) (citing *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (Colo.1968)). Thus, the Court's analysis collapses into a single inquiry, whether the exercise of personal jurisdiction over RTI comports with due process.

The Federal Circuit has determined "that the Due Process Clause at issue for personal jurisdiction in a patent case is that of the Fifth Amendment, and not the Fourteenth." *Red Wing Shoe,* 148 F.3d at 1358 n. * (citing *Akro,* 45 F.3d at 1544). However, as *Red Wing Shoe* acknowledged, the distinction is largely academic because the Federal Circuit, "though professing reliance on the Fifth Amendment, applies the Fourteenth Amendment state-contacts test of *International Shoe [Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ]." *Id.*

■ In *International Shoe,* the Supreme Court held that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The "minimum contacts" standard may be satisfied in either of two ways—general or specific jurisdiction. *See Kuenzle,* 102 F.3d at 455. General jurisdiction over the defendant exists where the defendant's contacts with the forum are "continuous and systematic." *See Trierweiler v. Croxton and Trench Holding*

*Corp.,* 90 F.3d 1523, 1533 (10th Cir.1996) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 & n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). In this case, Plaintiffs do not argue that RTI is subject to the general jurisdiction of this Court. Instead, Plaintiffs contend that RTI has sufficient contacts with the forum state to subject it to the Court's specific jurisdiction. The determination whether a court can exercise specific jurisdiction over a defendant involves consideration of three factors: "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." *3D Sys.,* 160 F.3d at 1378 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 476-77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Akro,* 45 F.3d at 1545-46).

### a. Purposefully Directed Activities

■ In *Red Wing Shoe,* the Federal Circuit held that there was no personal jurisdiction over a defendant patentee in a declaratory judgment action where the patentee's only contacts with the forum were three cease-and-desist letters sent to the plaintiff. 148 F.3d at 1361-62. The court held that "[s]tandards of fairness demand that [the patentee] be insulated from personal jurisdiction in a distant forum when its only contacts with that forum were efforts to give proper notice of its patent rights." *Id.* at 1361. The vast majority of courts to address the issue have reached the same conclusion. *See Wise v. Lindamood,* 89 F.Supp.2d 1187, 1191 (D.Colo.1999) (citing cases). In this case, however, Plaintiffs allege that RTI's actions go well beyond simply sending a few cease and desist letters.

Plaintiffs allege, and have offered some evidence to prove, that RTI, through Weinberger, sent at least eight demand letters and made over fifty telephone calls to OpenLCR in Colorado. Throughout an approximately six-month period, Wein-

berger refused any discussion regarding the validity of the RTI Patents, apparently preferring to focus his efforts at intimidating OpenLCR with threats of litigation in order to convince OpenLCR that it was in their best interest to sign a license agreement. According to the affidavit of Thomas Gallenstein, director of business development at OpenLCR, Weinberger told OpenLCR that even if OpenLCR's technology did not infringe on the RTI Patents, "RTI still had a 20% chance of winning in court ... and that OpenLCR should simply make a business decision to enter a license agreement with RTI to avoid a costly litigation in New York." (Gallenstein Aff. ¶ 11.) This evidence indicates that RTI was more interested in negotiating a license agreement than enforcing its patent rights. *Cf. PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1109 (2d Cir.1997) (holding patentee defendant subject to personal jurisdiction where evidence showed that patentee's business consisted of using cease-and-desist letters to negotiate royalty agreements with alleged violators).

Moreover, Plaintiffs' evidence indicates that Weinberger persisted with threats of litigation against OpenLCR, Casio, and the Sharp parties despite receiving documentation from OpenLCR and the Sharp parties showing that Sharp's facsimile machines use Alpha–LCR technology, a technology that Plaintiffs contend predates conception of the technology embodied in the '085 and '769 Patents and renders these patents invalid. (Gallenstein Aff. ¶¶ 8–10.) While recognizing that Plaintiffs' tort claims for intentional interference with business relations "in what is essentially a patent case are not reliable bases for jurisdiction," *see Kash 'N Gold v. AT-SPI, Inc.,* 690 F.Supp. 1160, 1163 (E.D.N.Y.1988), the Court is reluctant to hold on the limited facts presented that Plaintiffs' have not established a prima facie case of personal jurisdiction. Allegations of tortious conduct and bad faith enforcement of patent rights similar to those brought by Plaintiffs have been deemed sufficient to establish a prima fa-

cie case. *See, e.g., Modern Computer v. Ma,* 862 F.Supp. 938, (E.D.N.Y.1994) (declining to dismiss for lack of personal jurisdiction where plaintiffs alleged tortious interference with business relations in the forum). A patentee's right to enforce its patents is not without limits. "[T]he owner of a patent has a right to threaten suit for infringement, provided he does so in good faith." *See Kash 'N Gold,* 690 F.Supp. at 1163 (quotation omitted). "In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 897 (Fed.Cir.1998). In this case, the Court finds that Plaintiffs have made a threshold showing of bad faith on evidence that RTI persisted with threats of litigation while disregarding any possibility that Open–LCR's technology does not infringe RTI's patents. Accordingly, the Court holds that Plaintiffs have made a prima facie case that RTI's eight demand letters and over fifty telephone calls to OpenLCR and its business partners in an effort to force license agreements were not protected patent enforcement activities. Therefore, these activities can serve as bases for personal jurisdiction and satisfy the minimum contacts requirement of *International Shoe.*

### b. Claim Arises out of or Relates to Activities

The Federal Circuit has observed that sending cease-and-desist letters may give rise to a declaratory judgment action in a distant forum provided that maintenance of personal jurisdiction comports with notions of " 'fair play and substantial justice.' " *See Red Wing Shoe,* 148 F.3d at 1360 (quoting *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174).

In the event a patentee casts its net of cease-and-desist letters too widely and entangles some non-infringing products, a plaintiff may have little recourse other

than a declaratory judgment action to disentangle its non-infringing business. In those instances, the cease-and-desist letters are the cause of the entanglement and at least partially give rise to the plaintiff's action.

*Red Wing Shoe*, 148 F.3d at 1360. In this case, Plaintiffs have offered evidence to support their allegations that RTI had knowledge that its patents were invalid, yet persisted with threats of litigation to force OpenLCR and its business partners into license agreements. These minimum contacts clearly relate to Plaintiffs' cause of action seeking a declaration of invalidity of the RTI patents. It does not seem at all unreasonable that a patentee who knowingly attempts to force license agreements in a distant forum based on invalid patents should foresee being hailed into court in that forum. Under the circumstances, the Court finds that RTI's contacts are sufficiently related to Plaintiffs' declaratory judgment cause of action to satisfy due process.[2]

#### c. Reasonable and Fair

The third prong of the personal jurisdiction analysis "embodies the due process considerations of personal jurisdiction and places the burden on the party over whom jurisdiction is sought to prove that jurisdiction would be constitutionally unreasonable." *3D Sys.*, 160 F.3d at 1379–80. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174.

RTI contends that its burden in having to litigate the patent issue in a distant forum vastly outweighs any interest of the Plaintiffs or the forum in adjudicating the dispute within the forum. The Court acknowledges the heavy burden imposed on RTI to defend this lawsuit. However, RTI cannot dispute Colorado's "manifest interest" in preventing harm to one of its residents caused by bad-faith enforcement of patent rights. *See Burger King*, 471 U.S. at 473, 105 S.Ct. 2174 ("A State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.") (internal quotation omitted). Nor does RTI raise any significant issue with respect to efficient resolution of this matter. Although RTI seeks dismissal of Plaintiffs' tort and antitrust claims under Rule 12(b)(6), it does not argue that it cannot be subjected to this Court's personal jurisdiction with respect to those claims. Indeed, because RTI admittedly conducts business within the United States, the Court has personal jurisdiction over RTI with respect to Plaintiffs' antitrust claims as a matter of law. *See* 15 U.S.C.A. § 22 (West 1997) (authorizing nationwide service of process for antitrust proceedings), *and Application to Enforce Admin. Subpoenas Duces Tecum of the SEC v. Knowles*, 87 F.3d 413, 417 (10th Cir.1996) ("When the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States."). Also, while RTI objects to this forum, the record indicates that it voluntarily dismissed OpenLCR from the New York lawsuit because it did not believe OpenLCR was subject to personal jurisdiction in that forum. Thus, it appears that adjudication of the matter in this forum will provide the

---

**2.** Plaintiffs have argued that the minimum contacts standard is satisfied by RTI's other activities in the forum, including licensing the '308 Patent to companies that are either located in Colorado or that do business in Colorado, filing a previous patent infringement action in this Court to enforce the '308 Patent, and publicizing the LCR technology through the national media. The Court specifically rejects these contacts as establishing personal jurisdiction over RTI in this action; Plaintiffs' causes of action do not arise from or relate to these activities.

most efficient resolution of the parties' dispute.

In sum, Plaintiffs' evidence at this early stage of the litigation provides at least some support for their allegations that RTI was more interested in potential licensing agreements than it was with enforcing patent rights, that RTI disregarded any possibility that its patents may be invalid, and that RTI intentionally interfered with OpenLCR's business relationships in an effort to force licensing agreements. Because the evidence indicates that RTI's actions exceeded simple enforcement of patent rights, the Court finds that Plaintiffs have established a prima facie case of personal jurisdiction.

**2. Improper Venue**

■ RTI moves to dismiss for improper venue on grounds that it is not subject to this Court's personal jurisdiction. Having ruled that RTI is subject to personal jurisdiction, this motion must be denied. In non-diversity actions, venue is proper in any judicial district where the defendant resides. *See* 28 U.S.C.A. § 1391(b) (West 1993). For purposes of venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Id.* § 1391(c). Accordingly, RTI is deemed to reside in this judicial district and venue is proper.

**3. Insufficient Process and Insufficient Service of Process**

■ RTI next seeks dismissal of Plaintiffs' Amended Complaint on grounds of insufficient process and insufficient service of process. Plaintiffs brought this action against "Rates Technology, Inc., a New York corporation," apparently a real company, but one totally unrelated to the intended Defendant, Rates Technology, Inc., a Delaware corporation. However, the Court finds that Plaintiffs' mistake was a mere technical error that resulted in no prejudice to RTI. RTI was served, had notice of the suit, and timely responded to the Amended Complaint. Because Plaintiffs' error did not result in prejudice to RTI, the Court must deny RTI's motion to dismiss for insufficient service of process and insufficient process. *See United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir.1947) ("As a general rule the misnomer of a corporation in a notice, summons, ... or other step in a judicial proceeding is immaterial if it appears that it could not have been, or was not, misled."); 4A Charles A. Wright & Arthur R. Miller *Federal Practice and Procedure: Civil 2d* § 1088, at 32 (1987) (observing that dismissal is generally unwarranted absent indication that "the error actually results in defendant's prejudice or demonstrates a flagrant disregard of the requirements of [Rule 4]").

**4. First-to-File Rule**

■ RTI seeks dismissal of claims brought by the Sharp parties on grounds that RTI filed the New York lawsuit over the same patents against the Sharp parties before the Sharp parties joined in filing the Amended Complaint in this case. RTI argues that the issues raised in Plaintiffs' Amended Complaint should have been brought as compulsory counterclaims to RTI's initial lawsuit against OpenLCR and the Sharp parties in New York. While this may be true, RTI voluntarily dismissed the initial New York lawsuit in its entirety. To now dismiss the Sharp parties from this action for failure to raise compulsory counterclaims in a lawsuit that no longer exists is, at best, unwarranted.

■ In its briefs regarding this issue, RTI also contends that OpenLCR's initial Complaint in this action was filed in response to RTI's demand letters and in anticipation of RTI's filing suit in New York. RTI complains that Plaintiffs "are attempting to exploit the first-to-file rule by securing a venue that differs from the one that [RTI would have chosen]." (Def.'s Reply Br. at 20.) The Court interprets this as an assertion by RTI that equitable considerations require dismissal of this law-

suit in its entirety—i.e., RTI should not be deprived of its chosen forum simply because OpenLCR anticipated RTI's New York lawsuit.

The first-to-file rule may be invoked when a complaint raising the same issues against the same parties has previously been filed in another district court. *See Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 625 (9th Cir.1991). The rule serves to promote judicial efficiency by permitting district courts to decline jurisdiction over the later-in-time case. *See id.* RTI claims that although this lawsuit was first in time, RTI's New York lawsuit should be given priority because Plaintiffs filed this action in anticipation of RTI's New York litigation.

RTI is correct that anticipatory lawsuits, as well as lawsuits brought in bad faith, are exceptions to the first-to-file rule. *See id.* at 628. However, anticipatory filing of a declaratory judgment action is not improper where the opposing party has created a controversy by threatening litigation but has withheld filing suit. *See Topp–Cola Co. v. Coca–Cola Co.,* 314 F.2d 124, 125 (2d Cir.1963). In *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* for example, the court found that a first-filed suit was not an improper anticipatory filing where it was filed "in response to the disparaging remarks" of a business adversary and "with the hope of deterring unfair trade tactics." 860 F.Supp. 128, 133 (S.D.N.Y. 1994); *see also Ontel Prods., Inc. v. Project Strategies Corp.,* 899 F.Supp. 1144, 1151–52 (S.D.N.Y.1995) (anticipatory action not improper where other party delays filing threatened action).

In this case, RTI has offered no evidence indicating that OpenLCR or the Sharp parties considered entering into licensing agreements with RTI. To the contrary, the evidence shows that Plaintiffs presented Weinberger with documentation that, according to Plaintiffs, demonstrates the invalidity of the '085 and '769 Patents. Despite receipt of this information, Weinberger apparently continued with threats

of litigation against OpenLCR and users of OpenLCR's technology. The Court finds that under the circumstances, OpenLCR had a "legitimate and meritorious rationale for seeking a declaratory judgment," *800–Flowers,* 860 F.Supp. at 133, and that RTI has failed to show that OpenLCR acted in bad faith or was engaged in forum shopping. Accordingly, OpenLCR should not be denied application of the first-to-file rule in this instance.

■■■ Currently pending in the United States District Court for the Eastern District of New York is RTI's lawsuit against the Sharp parties and Home Shopping Network, Inc. alleging infringement of the '085 and '769 Patents. The overlap between RTI's New York lawsuit and this case is not complete; the cases involve at least some different parties and different legal issues. Where the overlap between two lawsuits is less than complete, courts decide whether to apply the first-to-file rule on a case by case basis, "based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *TPM Holdings, Inc. v. Intra–Gold Indus., Inc.,* 91 F.3d 1, 4 (1st Cir.1996). The Court acknowledges that resolution of Plaintiffs' tort and antitrust claims will necessarily involve resolution of the identical patent infringement actions currently pending in both courts, and that maintenance of two separate lawsuits involving the same patents and products presents a substantial likelihood for conflict. However, while both forums may share an interest in resolving the patent and antitrust issues, this forum clearly has a greater interest in resolving Plaintiffs' tort law causes of action involving questions of Colorado law. This interest provides an additional basis for the Court's decision to reject RTI's argument that this case should be dismissed under the first-to-file rule.

**B. RTI's Motion to Dismiss Plaintiffs' Antitrust and State Law Tort Claims**

RTI moves for dismissal of Plaintiffs' Second, Third, and Fourth Claims for Re-

lief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.[3] A court should not grant a motion to dismiss "for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering a Rule 12(b)(6) motion, the court must accept all factual allegations in the plaintiff's complaint as true, and must draw all reasonable inferences in favor of the plaintiff. *See id.* "So long as the plaintiff offers evidence in support of a legally recognized claim for relief, a motion to dismiss must be denied." *Arkansas–Platte & Gulf Partnership v. Dow Chem. Co.*, 886 F.Supp. 762, 766 (D.Colo.1995) (citing *Hiatt v. Schreiber*, 599 F.Supp. 1142, 1145 (D.Colo.1984)).

### 1. Antitrust Claim

■ Plaintiffs' Second Claim for Relief alleges that RTI, through threats and institution of patent infringement litigation, has attempted to monopolize the United States market for LCR technology through unlawful means. Plaintiffs specifically allege that RTI failed to reasonably investigate whether OpenLCR's Alpha–LCR technology infringed the '085 and '769 Patents, and that RTI knowingly failed to disclose prior art to the Patent Office during prosecution of these patents. RTI seeks dismissal of Plaintiffs' antitrust claim on grounds that the claim is barred by the *Noerr–Pennington* doctrine.

The *Noerr–Pennington* doctrine provides that "[t]hose who petition govern-

ment for redress are generally immune from antitrust liability." *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) ("*PRE*"). The contours of *Noerr–Pennington* were established through a series of cases. In *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, the Supreme Court held that the Sherman Act generally does not punish those who associate together "in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." 365 U.S. 127, 136, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). In *United Mine Workers v. Pennington*, the Court reiterated that "[j]oint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." 381 U.S. 657, 670, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In *California Motor Transp. Co. v. Trucking Unlimited*, the Court extended *Noerr–Pennington* to "the approach of citizens or groups of them to administrative agencies ... and to courts." 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). According to RTI, it cannot be held liable for antitrust violations for threatening and instituting the New York patent infringement litigation.

Courts have outlined two exceptions to *Noerr–Pennington* immunity.

> A patentee who brings an infringement suit may be subject to antitrust liability for the anti-competitive effects of that suit if the alleged infringer (the antitrust plaintiff) proves (1) that the asserted patent was obtained through knowing and willful fraud within the meaning of *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S.

---

**3.** As noted above, in addition to the declaratory judgment claim, Plaintiffs' Amended Complaint alleges a Second Claim for Relief for attempted monopolization, a Third Claim for Relief for tortious interference with the OpenLCR–Sharp contract, and a Fourth Claim for Relief for tortious interference with the OpenLCR–Casio contract and prospective business advantage of OpenLCR. Although

RTI moves for dismissal of only the Second and Third Claims for Relief, RTI asserts that all of Plaintiffs' tort and antitrust claims are barred as a matter of law, and Plaintiffs have responded to this assertion. Accordingly, the Court shall treat the motion as seeking dismissal of Plaintiffs' Second, Third, and Fourth Claims for Relief.

172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), or (2) that the infringement suit was "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor," [*Noerr*, 365 U.S. at 144, 81 S.Ct. 523]; . . . .

See *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed.Cir. 1998) (additional citation omitted). To state a *Walker Process* claim, an antitrust plaintiff must prove that the patentee "obtained the patent by knowingly and willfully misrepresenting facts to the Patent Office." *Walker Process*, 382 U.S. at 177, 86 S.Ct. 347. A failure to disclose material information may also constitute fraudulent misrepresentation. *See Nobelpharma*, 141 F.3d at 1070. With respect to the second exception, the Supreme Court has outlined a two-part test for determining the existence of "sham" litigation. First, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *PRE*, 508 U.S. at 60, 113 S.Ct. 1920. Only if the challenged litigation is objectively meritless does the court proceed to the second step of the analysis—examination of the litigant's subjective motivation to determine "whether the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor.' " *Id.* at 60–61, 113 S.Ct. 1920 (quoting *Noerr*, 365 U.S. at 144, 81 S.Ct. 523.) Here, Plaintiffs have alleged that Weinberger knowingly failed to disclose to the Patent Office material information concerning prior Alpha–LCR technology, the technology that RTI now asserts is infringing on the '085 and '769 Patents. Plaintiffs have also alleged that RTI's New York lawsuit constitutes sham litigation—i.e., that no reasonable litigant could realistically expect success on the merits given RTI's alleged fraud before the Patent Office, and that RTI brought its lawsuit with the subjective intent to harm OpenLCR's business relationships. Should Plaintiffs ultimately prove either set of allegations, RTI would not be entitled to immunity from antitrust liability under *Noerr–Pennington*. Accordingly, RTI's motion to dismiss Plaintiffs' antitrust claim must be denied.

## 2. Tort Claims

Plaintiffs' Third and Fourth Claims for Relief allege that RTI intentionally interfered with OpenLCR's contractual relationships and prospective business advantage by threatening and instituting patent infringement litigation. RTI seeks dismissal of these claims also on the basis of *Noerr–Pennington* immunity.

The Tenth Circuit has determined that *Noerr–Pennington*, although based in part on constitutional principles, is not itself constitutional. *See Cardtoons v. Major League Baseball Players Ass'n*, 208 F.3d 885, 889–91 & n. 4 (10th Cir.2000). In other words, the doctrine is not grounded entirely in the Petition Clause of the First Amendment, but is applicable only to antitrust claims. *Id.* Thus, RTI is not immune from tort liability under *Noerr–Pennington*. Moreover, with respect to RTI's assertion that threatening patent litigation is a protected activity under the First Amendment, *Cardtoons* held that "purely private threats of litigation are not protected because there is no petition addressed to the government." *Id.* at 893; *see also Rodime PLC v. Seagate Technology, Inc.*, 174 F.3d 1294, 1307 (Fed.Cir.1999) (recognizing that contacts with patentee's potential licensees are not entitled to immunity because the contacts "had nothing to do with petitioning the government"). Accordingly RTI's threats of litigation against Plaintiffs are not immunized by the Petition Clause of the First Amendment.

This leaves the question of whether and to what extent the Petition Clause imposes limitations on Plaintiffs' tort law causes of action based not on RTI's threats of litigation, but on allegations that RTI filed a baseless lawsuit in an attempt to interfere with Plaintiffs' contractual relations and prospective business advantage. However,

because Plaintiffs may proceed with their tort law claims based on RTI's threats of litigation alone, the Court need not decide the question at this time. Furthermore, this issue is better resolved through a motion for summary judgment, with benefit of a more fully developed factual record. *See Protect Our Mountain Env't, Inc. v. District Court*, 677 P.2d 1361, 1368–69 (Colo.1984) (holding that when presented with a Rule 12(b)(6) motion to dismiss based on the right to petition, "the court should give the parties a reasonable opportunity to present all material pertinent to the motion and should treat the motion as one for summary judgment . . . ."), *cited in Scott v. Hern*, 216 F.3d 897, 913–16 (10th Cir.2000). Therefore, the Court declines to address the issue at this time.

### Conclusion

For reasons stated,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss for lack of personal jurisdiction, improper venue, insufficiency of process, insufficiency of service of process, and the first-to-file rule is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Rule 12(b)(6) motion to dismiss Plaintiffs' Second, Third, and Fourth Claims for Relief is **DENIED.**