David L. HILDEBRAND,
Plaintiff–Appellant,

v.

STECK MANUFACTURING COMPA-
NY, INC., ATC Products, Inc., Corn-
well Quality Tools Company, Mac
Tools, Matco Tools, Snap–On Tools
Company, and Tools USA and Equip-
ment Company, Defendants–Appel-
lees,

and

Lock Technology, Inc. (also known as
Archer Tools, Casey Tools, and K–
C Tools), Defendant–Appellee.

Steck Manufacturing Company,
Inc., Plaintiff–Appellee,

v.

David L. Hildebrand and H.A.
Specialities, Inc., Defendants–
Appellants.

Nos. 01–1087, 01–1195.

United States Court of Appeals,
Federal Circuit.

Feb. 7, 2002.

Michael R. Henson, Timothy J. Martin, P.C., of Lakewood, CO, argued for plaintiff-appellant. With him on the brief was Timothy J. Martin.

Charles F. Shane, Bieser, Greer & Landis, LLP, of Dayton, OH, argued for defendants-appellees. With him on the brief for Steck Manufacturing Company, Inc., et al., was David C. Greer.

David R. Metzger, Sonnenschein Nath & Rosenthal, of Chicago, IL, for defendant-appellee Lock Technology, Inc. With him on the brief were Shashank S. Upadhye and Edward H. Rice.

Before MAYER, Chief Judge, LOURIE and DYK, Circuit Judges.

MAYER, Chief Judge.

David L. Hildebrand appeals the judgments of the United States District Court for the Southern District of Ohio dismissing his case for want of prosecution, *Hildebrand v. Steck Mfg. Co.*, No. C3–99–512 (S.D.Ohio Sept. 18, 2000) (order dismissing for want of prosecution), and granting default judgment to Steck Manufacturing Company, entering declaratory judgments of noninfringement, invalidity, and tortious interference with contract, *Steck Mfg. Co. v. Hildebrand*, No. C3–98–196 (S.D.Ohio Jan. 4, 2001) (order granting default judgment). Because the trial court erred in concluding that it had personal jurisdiction over Hildebrand, we reverse the judgments and remand the case.

## Background

Hildebrand, a Colorado resident, invented socket wrenches, "Screw Offs," for removing damaged car tire lug-nuts. In the fall of 1995, he filed for a United States patent and confidentially contacted two Ohio manufacturers, Mac Tools ("MAC") and Matco Tools ("MATCO"), to explore possible licensing agreements. None resulted. In late 1995, he discovered that MAC, MATCO, and two other Ohio corporations, Cornwell Quality Tools Company and Steck Manufacturing Company ("Steck"), were selling devices he claims were identical to his invention. The record shows that he mailed two cease and desist letters to MATCO and Steck, dated February 11, 1996, and February 15, 1996, respectively, and an alleged third to MAC. A sample set of tools, not for sale, accompanied the February 11 letter. The letters warned the recipients against potential infringement of his pending patent, warned of litigation, and suggested possible licensing agreements. He followed up his letters with isolated phone calls to MAC, MATCO, and Steck between February and April of 1996, and an additional letter to Steck dated December 9, 1997.

Hildebrand's patent issued on April 14, 1998, and he promptly notified the other parties. Consequently, MAC cancelled a $25,000 order for Steck's product until such time as the viability of Hildebrand's patent could be determined. In May of 1998, Steck filed an action in the Southern District of Ohio seeking a declaration of noninfringement, invalidity, and tortious interference with contract. Nine days later, Hildebrand filed a patent infringement suit against Steck in the District of Colorado. The Colorado court granted Steck's motion to dismiss and transfer the case to Ohio. Hildebrand ceased participating in both actions. Determining that personal jurisdiction over Hildebrand was proper, the

Ohio district court dismissed the original Colorado action for want of prosecution and granted default judgment to Steck. This appeal followed.

### Discussion

■ We apply Federal Circuit law to determine whether the district court properly exercised personal jurisdiction over out-of-state defendants in patent infringement cases. *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1358, 47 USPQ2d 1192, 1194 (Fed.Cir. 1998) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–65, 30 USPQ2d 1001, 1006 (Fed.Cir.1994)). Similarly, we apply Federal Circuit law to personal jurisdiction inquiries over out-of-state patentees as declaratory judgment defendants. *Id.* (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543, 33 USPQ2d 1505, 1506–07 (Fed.Cir.1995)). When the facts upon which the district court based its finding of personal jurisdiction are undisputed, as they are here, our review is *de novo. Id.*

■ A district court may properly exercise personal jurisdiction over a non-consenting party outside the forum state if a two-step inquiry is satisfied. First, the party must be amenable to service of process under the appropriate state long-arm statute. Fed. R. Civ. Pro. 4(e), 4(k)(1)(A); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Second, the culmination of the party's activities within the forum state must satisfy the minimum contacts requirement of the due process clause. *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154.

■ 1. The Ohio long-arm statute does not grant Ohio courts jurisdiction to the limits of the due process clause of the fourteenth amendment. *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 545 n. 1 (1994).[1] We must interpret the Ohio long-arm statute in accordance with Ohio precedent. *See Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1385, 47 USPQ2d 1622, 1624–25 (Fed.Cir.1998). The district court held that Hildebrand's contacts with Ohio satisfied three sections of the Ohio long-arm statute. We do not agree.

■■ The statute provides, in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state; ... (3) Causing tortious injury by an act or omission in this state; (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

Ohio Rev.Code Ann. § 2307.382 (West 2001). Hildebrand was not transacting any business in the forum per section (A)(1). The mere solicitation of business by a foreign person does not constitute transacting business in the state. *U.S. Sprint Communications Co. v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 624 N.E.2d 1048, 1052 (1994). To be doing business, negotiations must ultimately lead to a "substantial connection" with the forum, creating an affirmative obligation there.

---

1. *Akro Corp. v. Luker* stated that the " 'transacting any business' portion of the Ohio long-arm statute extends to the greatest reach of due process." 45 F.3d 1541,1544, 33 USPQ2d 1505, 1507 (Fed.Cir.1995). *Gold-* *stein* clarified that the General Assembly of Ohio did not intend the long-arm statute to extend to the limits of the due process clause. *See also Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998).

*Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Here, Hildebrand's offers to do business with MAC and MATCO, and warning letters coupled with offers to negotiate, rise only to the level of soliciting business. His proffers and negotiations with Ohio entities did not result in one binding licensing agreement or any other obligation.

 Hildebrand did not cause tortious injury by an act in the state per section (A)(3). To satisfy (A)(3), both the tortious act and the injury must occur in Ohio. *See Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir.1974); *Gor–Vue Corp. v. Hornell Elektrooptik AB*, 634 F.Supp. 535, 537 (N.D.Ohio 1986); *Busch v. Serv. Plastics, Inc.*, 11 Ohio Misc. 131, 261 F.Supp. 136, 140 (N.D.Ohio 1966). The presence of the alleged tortfeasor is required. *See Busch*, 261 F.Supp. at 140. Under the reasoning of *Weller*, 504 F.2d at 931, with which we agree, phone calls and letters sent into the forum do not constitute Hildebrand's presence in Ohio. By never being present in Ohio, therefore, Hildebrand could not have committed an act within Ohio.

 Nor did Hildebrand cause tortious injury in the state by an act outside the state per section (A)(4). Ohio requires that business actually be transacted in-state for the exercise of long-arm jurisdiction under section (A)(4). *Hoover Co. v. Robeson Indus.*, 904 F.Supp. 671, 673 (N.D.Ohio 1995). Hildebrand did not transact business in Ohio because no binding obligations within the forum were created. He did not regularly solicit business in the forum; he merely made isolated attempts to negotiate license agreements. And it is undisputed that he did not derive any revenue from entities in the state.

 Moreover, the causal link between Hildebrand's warning letters and MAC's cancellation of its contract with Steck for the purposes of (A)(3) and (A)(4) is tenuous at best. Hildebrand's contact was neither tortious, nor caused the cancelled contract. He properly notified MAC that he held a patent, and that MAC's purchase of Steck's products would likely infringe his patent. MAC then fulfilled its legal duty to avoid infringement and cancelled its order with Steck until such time as the status of Hildebrand's patent could be determined. *See Underwater Devices Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1389, 219 USPQ 569, 576 (Fed.Cir.1983) ("Where ... a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing. Such an affirmative duty includes, *inter alia*, the duty to seek and obtain competent legal advice from counsel *before* the initiation of any possible infringing activity." (citations omitted)). Thus, the cancellation followed from MAC's effort to comply with the law, and was not a result of tortious contact with the forum by Hildebrand.

2. Federal Circuit law applies to our federal due process inquiry. *Beverly Hills Fan Co.*, 21 F.3d at 1564–65, 30 USPQ2d at 1006. We apply the "minimum contacts" standard developed in *International Shoe* and its progeny for fourteenth amendment due process inquiries to our fifth amendment due process cases arising under the federal patent laws. *Akro*, 45 F.3d at 1545, 33 USPQ2d at 1508. We examine the number and nature of the defendants' contacts with the forum state to determine if haling them into court there comports with "fair play and substantial justice." *Red Wing*, 148 F.3d at 1359, 47 USPQ2d at 1195 (citing *Burger King Corp.*, 471 U.S. at 478, 105 S.Ct. 2174).

In *Akro*, we found that jurisdiction over the out-of-state defendant patentee, Luker,

satisfied due process. 45 F.3d at 1541, 33 USPQ2d at 1505. Luker's contacts with the forum state consisted of six letters warning of possible infringement sent by his attorney into the forum, unsuccessful settlement negotiations with Akro which lasted three years, and most importantly an exclusive licensing agreement with Akro's competitor in the forum state. We found first that Luker's contacts were purposefully directed into the forum primarily because he had created continuing obligations in the forum with the exclusive license. *Id.* at 1546, 45 F.3d 1541, 33 USPQ2d at 1509. Second, the action arose out of the contact with the forum because the licensed patent was the basis for allegations that Akro's goods infringed. *Id.* at 1548–49, 45 F.3d 1541, 33 USPQ2d at 1511. Third, jurisdiction was fair and reasonable because Luker presented no evidence that the state's interest in deterring infringement was marginalized by the burden of subjecting Luker to jurisdiction in the forum. *Id.* at 1549, 33 USPQ2d at 1512.

*Red Wing* held that exercising jurisdiction over a declaratory judgment defendant patentee based on three warning letters mailed into the forum state, even if coupled with licensing offers, was not constitutionally sound. 148 F.3d at 1355, 47 USPQ2d at 1192. Fairness and reasonableness demand that a patentee be free to inform a party who happens to be located in a particular forum of suspected infringement without the risk of being subjected to a law suit in that forum. *Id.* at 1361, 148 F.3d 1355, 47 USPQ2d at 1197. And an offer to license is so closely akin to an offer to settle that it may not be a separate contact upon which to base jurisdiction. *Id.* In stark contrast, jurisdiction was appropriate in *Akro* "*because* the patentee had substantial contacts with an exclusive *licensee* who was incorporated and had its principal place of business there." *Red Wing,* 148 F.3d at 1361, 47 USPQ2d at 1197–98 (emphasis added).

In the present case, Hildebrand's contacts with the forum do not amount to significantly more than those present in *Red Wing.* All of his documented contacts were for the purpose of warning against infringement or negotiating license agreements, and he lacked a binding obligation in the forum. *See also Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1362, 58 USPQ2d 1774, 1778 (Fed.Cir.2001).

The Ohio district court thought that this case is more like *Akro* than *Red Wing.* The court recognized that Hildebrand's cease and desist letters coupled with offers to negotiate licensing agreements were insufficient under *Akro* to create jurisdiction. But it relied on the additional facts that he mailed a sample set of tools to MATCO in 1996 as part of an offer to do business, and that his cease and desist letter to MAC precipitated a cancelled order, to assert jurisdiction. We do not agree that these were significant additional contacts.

The inclusion of the sample with the February 11 letter to MATCO was part of the offer to negotiate a licensing agreement. The set of tools was a prototype, not for sale, intended only to generate MATCO's interest in purchasing the design. The device was not injected into the forum for any purpose other than to negotiate a license. It does not constitute a separate contact, and therefore falls squarely within the boundary of *Red Wing.* Likewise, the cancellation of MAC's order may not be attributed to Hildebrand as a separate contact with the forum. The alleged warning letter to MAC was the contact with the forum. The information contained in the letter, that Hildebrand held a valid patent, invoked MAC's affirmative duty to avoid infringement. Prudence precipitated the cancellation. The accumulation of Hildebrand's contacts with Ohio do not create a constitutionally adequate basis for personal jurisdiction.

*Conclusion*

Accordingly, the judgments of the United States District Court for the Southern District of Ohio are reversed and the case is remanded for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*