**INTERNATIONAL TRUCK AND ENGINE CORP., International Truck Intellectual Property Co., LLC, International Truck and Engine Corporation Canada Plaintiffs**

v.

**DAWSON INTERNATIONAL INC., Defendant.**

No. 1:01–CV–0374.

United States District Court, N.D. Indiana, Fort Wayne Division.

April 12, 2002.

C. Erik Chickedantz, Jeffrey P. Smith, Hawk Haynie Gallmeyer and Chickedantz, Fort Wayne, IN, Raymond, R. Niro, Raymond P. Niro, Jr., Christopher P. Casimer, Niro Scavone Haller and Niro, Chicago, IL, for plaintiffs.

Alan VerPlanck, James Fenton, Eilbacher Scott, Inc., Fort Wayne, IN, Daniel V. Thompson, Thompson and Gustavson LLP, Dallas, TX, for defendant.

Daniel J. Sigler, Bloom Gates and Whiteleather, Columbia City, IN, for mediator.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

Presently before the court is Defendant Dawson International, Inc.'s ("Dawson's") "Motion to Dismiss for Improper Venue, or in the Alternative, To Transfer" filed on January 2, 2002. Plaintiffs, (collectively, "International") responded on February 22, 2002 to which Dawson replied on March 7, 2002. For the following reasons, Dawson's Motion to DISMISS will be DENIED and it's alternative Motion to Transfer will also be DENIED.

## DISCUSSION

International filed this claim for patent infringement against Dawson seeking monetary damages, attorneys fees and costs and a permanent injunction prohibiting further acts of infringement. The Complaint alleges infringement of five United States Patents, all involving truck hoods for specific International Truck models, including: No. 4,971,172 issued November 20, 1990 and entitled "Truck Hood Engine Air Induction System"; No. 5,054, 567 issued October 8, 1991 and entitled "Truck Hood Reinforcement System"; Nos. Des. 307,126, Des. 328,273, Des. 391,-908 issued on April 10, 1990, July 28, 1992, and March 10, 1998, respectively and each bearing the title "Exterior Shell of a Vehicle Hood."

International Truck and Engine Corporation, LLC, formerly known as Navistar International Transportation Corp., is a Delaware corporation with its principal place of business in Warrenville, Illinois. International Truck does business in this judicial district at its facility located at 2911 Meyer Road, Fort Wayne, Indiana. International Truck Intellectual Property Co., LLC is a wholly owned subsidiary of International Truck and is also a Delaware

corporation with its principal place of business in Warrenville, Illinois. International Truck and Engine Corporation Canada is also a wholly owned subsidiary of International Truck and is an Ontario, Canada corporation with its principal place of business in Hamilton, Ontario.

Defendant Dawson is a Texas corporation with its principal place of business in Dallas, Texas. It is a small business operation selling collision related replacement new body parts for a wide variety of both imported and domestic trucks. (Decl. of Donald Cameron, ¶ 2).

Thus far, the only suggestion of any connection between this lawsuit and this district is the fact that International Truck conducts business in this judicial district. For this reason, Dawson has filed a motion to dismiss or in the alternative to transfer for improper venue. In support of its motion, it presents the following facts:

Dawson ships about 95% of its parts directly from its Dallas location to collision repair businesses and truck dealers located all over the country. (*Id.*). These parts are sold through a catalog distributed by mail to Dawson's potential customers. (*Id.*). The remaining 5% of its parts are sold to dealers in New Jersey, New Hampshire, Georgia, Iowa, and California. These dealers serve local areas and do not engage in any significant re-shipping or marketing of Dawson's products to customers in Indiana.

Dawson utilizes a computer system to maintain records of sales. According to Cameron, Dawson's president, he has reviewed the sales records for the preceding five years and has found that Dawson has not sold any of the hoods in this judicial district that resemble any of the truck hoods identified in the five patents which are the subject of this lawsuit. Dawson did sell one International style hood in this judicial district but it was for a model not covered by any of the patents in this lawsuit. Dawson has also sold 44 other make and model hoods in this judicial district out of 9,282 hoods sold nationwide in the past five years (a percentage of .47%)

Dawson owns no real estate, has no facilities and no employees located in the Northern District of Indiana. None of its directors, officers or shareholders reside in this district nor is Dawson licensed or registered to do business in Indiana. Dawson does advertise through a catalog mailed to customers nationwide but does not advertise in any publications specifically targeting consumers in Indiana. Dawson has no salesmen or sales representatives attending to customers in Indiana.

International does not dispute these assertions but responds with the addition of the following facts:

— For the last eight years, Dawson has advertised in trade publications with circulation through Indiana;

— Dawson's largest customer in Indiana is S & J Salvage in Fort Wayne which has steadily purchased products from Dawson for five years;

— Dawson distributed its catalog throughout Indiana and in Fort Wayne to persons requesting such catalogs. (Cameron Dep. pp. 90–91). The catalogs included as products offered for sale truck hoods which include hoods allegedly protected by the patents involved in this case;

— Dawson communicates with customers in this judicial district through its toll free telephone number and its Internet website. The Internet website contains a form customers may fill out to email comments to Dawson or to request catalogs. (Cameron Dep. p. 85).

■ As indicated at the outset, Dawson has filed a motion to dismiss or in the alternative to transfer asserting that venue properly lies in the Northern District of Texas, Dallas Division. The statute governing venue for patent infringement ac-

tions provides, in pertinent part, that venue is proper in a patent infringement suit "where the defendant resides...." 28 U.S.C. § 1400(b) (1993). The statute that defines the residence of a corporation for purposes of venue determinations provides, in pertinent part, that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c) (1993). Based upon these provisions, the concepts of venue and personal jurisdiction merge into a single inquiry, that is, whether personal jurisdiction exists in the judicial district at the time the action was commenced. *See Id.*

■ Plaintiffs bear the burden of demonstrating personal jurisdiction. *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir.2000), citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997). In order to meet this burden, the plaintiff must provide sufficient evidence to establish a prima facie case of personal jurisdiction. *Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir.1994). The parties conducted discovery related to the jurisdictional issues but did not request an evidentiary hearing. Plaintiff has filed no affidavits but has submitted various exhibits for the court's review as well as the deposition testimony of Donald Cameron ("Cameron"), president of Dawson. Defendant filed Cameron's affidavit.

■ A federal court applies the state jurisdictional statutes of the state in which it sits when determining whether it has personal jurisdiction over a defendant, even when the cause of action, like patent infringement, is federal. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1569 (Fed.Cir.1994); Fed.R.Civ.P. 4(e), (k). Federal Circuit law controls the issue of whether a non-resident Defendant accused of patent infringement is subject to personal jurisdiction. *Beverly Hills Fan*, 21 F.3d at 1568; *Recycling Sciences International, Inc. v. Soil Restoration and Recycling L.L.C.*, 2001 WL 1329304, *2 (N.D.Ill.)(citing *LSI Indus. Inc. v. Hubbell Lighting*, 232 F.3d 1369, 1371 (Fed.Cir. 2000)) ("[In patent cases] Federal Circuit law is controlling with deference given to the state's highest court to determine whether a defendant is amenable to process in the forum state.") Personal jurisdiction over a non-resident Defendant includes two inquiries: whether the state's long-arm statutes permit service of process on Defendant, and if so, whether assertion of jurisdiction would violate Constitutional due process. *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed.Cir.1998). A defendant is amenable to service of process if it "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district is located." Fed. R.Civ.P. 4(k)(1)(A). Since this action was brought Indiana, the court turns first to whether Indiana's long-arm statutes permit service of process on Dawson.

■ Indiana's long-arm statute identifies several ways a person submits to the jurisdiction of Indiana courts.[1] One of

---

1. There are two types of long-arm statutes: (1) those which direct the court to exercise jurisdiction to the extent allowed by the United States and state constitutions and (2) "enumerated act" statutes, which direct the court to assert jurisdiction over defendants who commit any act listed in the statute in the state. See 16 James Wm. Moore et al., Moore's Federal Practice § 108.60[1] (3d ed.1999). Contrary to International's statements in its brief, Indiana's statute is an "enumerated act" statute. *Anthem Ins. Companies, Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1231–1232 (Ind.2000). Under such a statute, courts must determine wheth-

these ways is by doing business or transacting business in Indiana. Ind.Trial Rule 4.4(A)(1). Here, it is clear from Dawson's filings that it does conduct business in Indiana in that it has sold products in Indiana and has at least one regular Indiana customer, S & J Salvage.

■ Moreover, the generality of Indiana's "doing business" provision permits service of process over defendants whose business in Indiana is unrelated to the suit brought in Indiana. *See American Economy Ins. Co. v. Felts*, 759 N.E.2d 649, 658 (Ind.Ct.App.2001). Thus, the fact that Dawson has not actually sold an allegedly infringing product in Indiana, (Cameron Aff. ¶¶ 5–7), would not immunize it from service under Indiana law. Thus, the court concludes that Dawson falls within the reach of Indiana's long-arm statute.

■ Next, the court must decide whether the exercise of personal jurisdiction comports with due process. *Anthem*, 730 N.E.2d at 1234. In assessing due process, a court is to use a two-part test: First, a court must look at the contacts between the defendant and the forum state to determine if they are sufficient to establish that the defendant could "reasonably anticipate being haled into court there". Second, if the contacts are sufficient, then the court must evaluate whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice" by weighing a variety of interests. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ Under the first part of the test, Dawson's conduct and connection with Indiana must be such that it "should reasonably anticipate being haled into court" in Indiana. *Burger King Corp.*, 471 U.S.

at 474, 105 S.Ct. 2174. This inquiry is satisfied where a defendant has purposefully availed itself of the privilege of conducting activities in Indiana and invoked the protections of Indiana law. *Id.* at 474, 105 S.Ct. at 2183. Satisfaction of the purposeful availment and minimum contacts due process requirements may be achieved through analysis of either the defendant's general contacts with the forum or the defendant's specific contacts related to the cause of action before the court. *Hexacomb Corp. v. Damage Prevention Products Corp.*, 905 F.Supp. 557 (N.D.Ind. 1995). General contacts with the forum are those contacts by a defendant in the forum state which are "systematic and continuous" although unrelated to the cause of action litigated. In contrast, specific contacts jurisdiction exists where the cause of action arises out of or relates to the defendant's activities in the forum state. *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 n. 8, 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 666 n. 3 (7th Cir.1986).

Dawson asserts that there is no basis for general jurisdiction in this case in that it has not had systematic and continuous contact with Indiana so as to make it amenable to jurisdiction here. The only hints of general jurisdiction alleged by International is Dawson's relationship with S & J Salvage, a business in Fort Wayne, Indiana, with whom Dawson has done business "on and off" since 1997 and the fact that Dawson has sold products (other than allegedly infringing products) in Indiana. The Federal Circuit has made clear that no specific test exists when analyzing whether a defendant's activities within a state are "continuous and system-

er the state's long-arm statutes permit service of process on Defendant, and if so, whether assertion of jurisdiction would violate Consti-

tutional due process. *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed.Cir.1998).

atic." "Instead, a court must look at the facts of each case to make such a determination." *LSI Industries Inc. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1375 (Fed. Cir.2000). In general, the standard for establishing general personal jurisdiction is a high one. *Wilson v. Humphreys Ltd.,* 916 F.2d 1239, 1245 (7th Cir.1990).

International provides little to no argument in support of any claim for general jurisdiction for good reason, even considering its sales to S & J Salvage, Dawson has completed only a minuscule amount of sales in Indiana, .47% of its total sales. Rather, International's focus is on specific jurisdiction, and in particular, it contends that jurisdiction exists over the defendants in Indiana because Dawson purposefully established minimum contacts with Indiana, the cause of action arises out of those contacts, and jurisdiction is constitutionally reasonable. See *Burger King Corp.,* 471 U.S. at 472, 476–77, 105 S.Ct. 2174.

To support its argument that personal jurisdiction is present over Dawson in Indiana, International points out that the patent statute, 35 U.S.C. § 271(a), includes as a separate and distinct act of patent infringement offers for the sale of allegedly infringing products.[2] In patent cases, where a defendant infringer is shown to have sold or offered for sale an allegedly infringing product in the forum state, the forum may exercise specific personal jurisdiction. See *3D Systems Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1378–79 (Fed. Cir.1998).[3] Thus, under International's theory, if Dawson "offered to sell" the allegedly infringing products in the forum

state, the court may exercise specific jurisdiction.

International argues that Dawson has mailed catalogs advertising for sale allegedly infringing products to customers in the Northern District of Indiana, and that it has advertised allegedly infringing products in trade publications reaching prospective customers in Indiana. This conduct, International claims constitutes an "offer for sale" of the infringing products. Dawson responds to this argument by claiming that neither the catalogs and advertisements can be considered offers for sale because these items are part of a nationwide marketing program and advertisements directed to a national audience are not considered offers to sell. See *ESAB Group, Inc., v. Centricut, LLC,* 34 F.Supp.2d 323, 333 (D.S.C.1999) (finding that internet web site containing product descriptions was part of nationwide marketing and no separate showing was made that any offers actually were directed to South Carolina, by virtue of a consumer visiting the site); see also *Lifting Techs., Inc. v. Dixon Indus., Inc.,* 1996 WL 653391, at *5 (D.Mont. Aug.27, 1996) (finding jurisdiction in Montana under the offer to sell provision where facts showed that magazine advertisements reached six of plaintiff's customers in Montana and defendant also sent a direct solicitation, including a price quote, to a Montana resident). Further, Defendant argues that the catalogs, while containing general product descriptions, payment and warranty information, do not contain prices so as to make them "offers for sale" under

---

**2.** In 1996, Congress amended the patent statutes to expand the range of activities constituting an actionable claim for infringement to include an offer to sell, as well as an actual sale of infringing goods. 35 U.S.C. § 271(a) ("whoever without authority makes, uses, offers to sell or sells any patented invention ... infringes the patent"). Accordingly, specific

jurisdiction may be appropriate in each state that a defendant has "offered to sell" or sold the allegedly infringing product pursuant to this statutory change.

**3.** Here, it is clear that Dawson has not actually sold an allegedly infringing product in this district.

§ 271(a). *See 3D Systems, Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1378–79 (Fed.Cir.1998). Finally, Dawson points out that the catalogs are mailed to customers in Indiana only after persons call and request a catalog thus, it is not "purposefully availing itself" of an Indiana forum. (Cameron Dep. pp. 90–91).

The Federal Circuit first considered the meaning of "offer for sale" in the context of § 271(a) in *3D Systems.* In that case, a patentee sued three defendants in the United States District Court for the Central District of California for infringement of a variety of patents. The patentee argued that the defendants were liable for "offering to sell" the inventions disclosed in the patents through price quotation lists sent to prospective purchasers in the district. The price quotation lists contained disclaimers indicating that they were not offers to sell. The defendants, as in this case, moved to dismiss the suit for lack of personal jurisdiction, arguing that the plaintiff had failed to establish the elements for personal jurisdiction. The district court agreed, granted the motion and dismissed all claims. See *id.* at 1376. On appeal, the Federal Circuit reversed and found that the defendants' actions were purposefully directed at the residents of the forum state in that the defendants "offered" its patented inventions for sale in violation of § 271(a). In reaching this conclusion, the court determined that the very purpose of the "offers for sale" provision in § 271(a) was to prohibit conduct that "generates interest in a potential infringing product to the commercial detriment of the rightful patentee." *3D Sys.*, 160 F.3d at 1379 n. 4. Thus, the court found that the defendants' price quotation letters were in fact offers to sell, even though they purported not to be on their face. "[T]o treat them as anything other than offers to sell would be to exalt form over substance." *Id.* at 1379. Accordingly, it found that "[a]s a matter of federal statutory construction, the price quotation letters can be regarded as 'offer[s] to sell' under § 271 based on the substance conveyed in the letters, i.e., a description of the allegedly infringing merchandise and the price at which it can be purchased." *Id.*[4]

As noted above, Dawson argues that since its catalogs are part of a national marketing campaign and do not contain price lists, (in fact, Dawson requires customers to call to ascertain pricing at the time of an order, see Reply, p. 3), it has not, according to *3D Systems* made "offers to sell" infringing products in this district. Dawson further supports its argument with *VP Intellectual Properties, LLC v. IMTEC Corporation*, 1999 WL 1125204 (D.N.J. Dec.9, 1999) wherein the court concluded that the maintenance of an internet site that contains a product description but no pricing information is not an "offer to sell" under § 271(a).

■ Having thoroughly reviewed and considered the Federal Circuit's conclusion in *3D Systems* as well as the other cases cited by Dawson, this court finds that personal jurisdiction exists in this district over Dawson. Dawson is correct that advertisements directed at a national audience are not "offers to sell" within a particular forum. However, where specific advertisements are purposefully circulated to residents of the forum state, a defendant has purposefully availed itself to suit in the forum state. Dawson admits that it mails catalogs to prospective Indiana customers when it receives a request for a catalog

---

4. Since *3D Systems,* the Federal Circuit has had one other occasion to interpret the "offers for sale" requirement in § 271(a) and has interpreted the provision in accordance with the holding in *3D Systems.* See *Rotec Industries, Inc. v. Mitsubishi Corp.,* 215 F.3d 1246 (Fed.Cir.2000).

from a prospective purchaser. Thus, it has admitted purposefully directing catalogs into the state to facilitate sales of its products. Moreover, while the catalogs at issue may lack pricing information, they do contain a photograph and product description, warranty information, Dawson's freight policy and payment terms as well as methods to establish credit with Dawson.[5] Looked at in this light, the court fails to see how these catalogs could be intended to do anything other than "generat[e] interest in a potential infringing product to the commercial detriment of the rightful patentee." *3D Systems*, 160 F.3d at 1379.

Dawson presents no cases distinguishing between unsolicited general mailings to customers and mailings in response to specific requests for catalogs as it alleges occurs here; but, under either circumstance, the fact that Dawson knowingly mails catalogs directly to customers in Indiana certainly is evidence that it purposefully availed itself of an Indiana market. Further, it appears that the entire business strategy of sending catalogs to prospective purchasers is done to generate interest in the potential purchaser so that the purchaser will call to obtain pricing information and place an order. Thus, Dawson can hardly claim that it lacked "fair warning" that it would be called to defend a suit in Indiana arising out of its business practices. *Klump v. Duffus*, 71 F.3d 1368, 1372 (7th Cir.1995) (quoting *Burger King*, 471 U.S. at 477–78, 105 S.Ct. 2174), *cert. denied*, 518 U.S. 1004, 116 S.Ct. 2523, 135 L.Ed.2d 1047 (1996) (a defendant has fair warning of potential lawsuit in forum if it "purposefully avails itself of the privilege of conducting activities within the forum State thereby invoking the benefits and protections of the forum's laws."). Finally, as recognized in *3D Systems*, Dawson's conduct is precisely the type of conduct intended to be foreclosed by § 271(a):

> The price quotation letters sent by Aaroflex to California residents state on their face that they are purportedly not offers, but to treat them as anything other than offers to sell would be to exalt form over substance. We have consistently held that such exaltation is not appropriate in the due process analysis. If we were to permit potential infringers to avoid jurisdiction by denominating what otherwise would be an offer to sell merely by asserting the contrary in the offer, the prohibition added to § 271(a) against offers to sell would be hollow indeed. One of the purposes of adding "offer[ ] to sell" to § 271(a) was to prevent exactly the type

5. International also points to the fact that Dawson recently distributed its catalogs to Sterling dealerships throughout Indiana, and in particular, to the Whiteford Ford Truck Center at 3150 Coliseum Blvd. West, Fort Wayne, Indiana. In addition to distributing its catalog, Dawson also sent a form cover letter that includes as an attachment "price lists." (Cameron Dep. p. 61). Thus, International claims that Dawson does include pricing information with its catalogs. Dawson does not dispute that it recently mailed 600 unsolicited catalogs to Sterling dealerships but argues that this evidence cannot be considered since it relates to contacts with the forum occurring subsequent to the events giving rise to this litigation, and thus is irrelevant to whether specific jurisdiction can be exercised over the defendants. Unfortunately for International, Dawson's argument is well-taken. *See Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174 (holding that a court may exercise specific jurisdiction if a "defendant has 'purposefully directed' his activities at residents of the forum ... *and the litigation results from alleged injuries that 'arise out of or relate to' those activities."); *Lachman v. Bank of Louisiana in New Orleans*, 510 F.Supp. 753, 757 (N.D.Ohio 1981)("Jurisdiction is to be determined by examining the conduct of the defendant as of the time of service of the complaint."). As a result, this catalog mailing to Sterling Dealerships cannot be used as a basis to support personal jurisdiction in Indiana.

of activity Aaroflex has engaged in, i.e., generating interest in a potential infringing product to the commercial detriment of the rightful patentee. As a matter of federal statutory construction, the price quotation letters can be regarded as "offer[s] to sell" under § 271 based on the substance conveyed in the letters, i.e., a description of the allegedly infringing merchandise and the price at which it can be purchased. Moreover, such a construction harmonizes with the broad definition of "offer to sell" provided in § 271(i).

*3D Systems, Inc.*, 160 F.3d at 1379. Accordingly, the court finds that Dawson "offered to sell" a potentially infringing product in this district so as to satisfy due process and permit the exercise of personal jurisdiction over it here. *But see, VP Intellectual*, 1999 WL 1125204 (D.N.J. December 9, 1999) (holding that internet website lacking pricing information is not an offer to sell).

Once a court has found that a defendant's contacts with the forum state are sufficiently significant to confer jurisdiction, the court must examine other factors, such as the forum's interest in adjudicating the dispute and the burden on the defendant, to determine whether the exercise of personal jurisdiction satisfies traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 476–77, 105 S.Ct. 2174. In certain limited circumstances, these factors may show that a forum has such a strong interest in adjudicating a dispute that a lesser showing of minimum contacts than is normally the case may suffice for jurisdiction. *Id.* at 477, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528.

Dawson makes no argument that it is unfair, inconvenient or even burdensome to litigate this case in Indiana nor does it argue that Indiana has only a limited interest in adjudicating this dispute. To the contrary, it appears that Indiana has a general interest in ensuring that entities conducting business within its borders do not violate federal patent laws. Thus, the court concludes that exercising jurisdiction over Dawson is reasonable and fair.

In sum, personal jurisdiction over Dawson comports with due process in that there are sufficient minimum contacts with Indiana (and this district) such that Dawson should have reasonably anticipated being hailed into court here. In addition, jurisdiction in this court satisfies traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 476–77, 105 S.Ct. 2174. Accordingly, Dawson's Motion to DISMISS for improper venue is hereby DENIED.

Finally, the court notes that as an alternative to dismissal, Dawson requests, pursuant to 28 U.S.C. § 1406, that this case be transferred to the United States District Court for the Northern District of Texas. Unfortunately for Dawson, § 1406 transfers are only proper when venue is improper in the district in which the action was filed. *See* 28 U.S.C. § 1406 ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). Here, because the court concludes that venue under the patent statute has been established, a § 1406 transfer is not feasible.

Nevertheless, under 28 U.S.C. § 1404(a) a court may change the venue of an action: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under this section, a transfer is appropriate if (1) venue is proper in both the transferor and transferee

court; (2) the transfer is for the convenience of the parties and witnesses; and (3) the transfer is in the interests of justice. *TruServ Corporation v. Neff,* 6 F.Supp.2d 790, 793 (N.D.Ill.1998). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude and therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986); *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir.1989). The defendant has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217 (7th Cir.1986).

Dawson offers no facts and circumstances to permit this court to transfer the case, save its representation that jurisdiction and venue would be proper in Texas. As a result, Dawson has failed to meet its burden with respect to any § 1404 transfer. Accordingly, Dawson's alternative motion to transfer is DENIED.

### CONCLUSION

Based on the foregoing, Dawson's Motion to Dismiss for Improper Venue is DENIED as is Dawson's Alternative Motion to Transfer.