**VERSATILE PLASTICS, INC. d/b/a PJS Products, Plaintiff,**

v.

**SKNOWBEST! INC., Patrick E. Meacham, Powermadd, Inc., Ernest J. DeLanghe, and DeLanghe Enterprises, Inc., Defendants.**

No. 02–C–869.

United States District Court, E.D. Wisconsin.

Feb. 28, 2003.

David G. Hanson, Leslie S. Miller, Paul J. Stockhausen, Reinhart, Boerner, Van Deuren, Milwaukee, WI, for Plaintiff.

Dana M. Berce Serrano, Jonathan H. Margolies, Michael, Best & Friedrich, Milwaukee, WI, Darren B. Schwiebert, Lora Esch Mitchell, Fredrickson & Byron, PA, Minneapolis, MN, for Sknowbest! Inc. and Patrick E. Meacham.

Charles N. Nauen, Robert K Shelquist, Lockridge, Grindal, Nauen, Lockridge Grindal Nauen, Minneapolis, MN, for Powermadd Inc., Ernest J. Delanghe, and Delanghe Enterprises, Inc.

## DECISION AND ORDER

GRIESBACH, District Judge.

Plaintiff filed an action for a declaratory judgment of noninfringement of Sknowbest! Inc.'s ("Sknowbest") patent, and also asserted claims of tortious interference, trade libel, antitrust and conspiracy resulting from infringement notice letters sent on behalf of Sknowbest and possibly the other defendants. Presently before me are several motions to dismiss, which I address herein. The two individual defendants seek dismissal under Rule 12(b)(2) for lack of personal jurisdiction. All of the defendants have moved for dismissal of all damage claims (that is, all except plaintiff's declaratory judgment claim) on the grounds that infringement notice letters are immunized under First Amendment petitioning immunity, specifically, the *Noerr–Pennington* doctrine. In addition, DeLanghe Enterprises, Inc. ("DEI") and Ernest DeLanghe seek dismissal under Rule 12(b)(6) because they assert that plaintiff's amended complaint does not affirmatively link them to any complained-of activities. For the reasons stated herein, I will grant the individual defendants' motions to dismiss for lack of personal jurisdiction. I also grant the remaining defendants' motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, but will allow plaintiff leave to plead over since it appears from the entire record before me that it may yet be able to properly do so.

## I. Background

Plaintiff, which calls itself PJS Products, is a manufacturer and seller of "Sledder's Choice Quadra–Slides" which are, it seems, a sort of gliding mechanism for loading snowmobiles onto trailers. The defendants are also in the same business. In fact, defendant Sknowbest is the owner of U.S. Patent No. 5,609,110 (the "'110 Patent"), and Sknowbest believes (although

this is disputed) that this patent is being infringed by plaintiff's Quadra–Slides. The underlying patent and infringement claims are not at issue presently, however.

In April 2002, Sknowbest and DEI entered into an assignment and license agreement, whereby DEI assigned its entire interest in the patent to Sknowbest and Sknowbest granted DEI a license back. (Am.Compl., Ex. A.) Plaintiff alleges that in May 2002 the defendants caused Sknowbest's counsel to send an infringement notice letter to Phil Schounard, president of PJS Products. (Mitchell Aff., Ex. A.) Following this letter to PJS, Sknowbest's counsel sent additional letters to several other companies in the snowmobile industry, including three with whom plaintiff claims to have had contracts or prospective business relationships. The second letter advised the recipients that plaintiff's "Sledder's Choice Quadra–Sides" infringed on the '110 Patent and that the acts of selling or offering for sale such channel members constituted infringement of Sknowbest!'s patent rights for which they could be held liable for damages. The letter requested them to cease and desist from any further sales of the channel members. (Am. Compl., Ex. B; Mitchell Aff. Ex. B.) It is not disputed that these letters were sent, but several defendants assert that they had no involvement in the act of sending the letters or the direction to send them.

Plaintiff asserts that these letters were sent in bad faith and are baseless, as defendants "knew that the '110 Patent was worthless, invalid, and unenforceable." (Pl. Br. at 4.) In actuality, plaintiff asserts, defendants sought to use the patent as a "bludgeon," the letters being "carefully calculated" to harm plaintiff's business. *Id.* The calculating aspect arises because, as plaintiff explains, May is a particularly important month in the snowmobile business, as distributors decide which products will appear in their catalogs. Thus, by sending these bad faith infringement letters in May, defendants were acting maliciously towards plaintiff with the intent of harming plaintiff's business.

PJS brings seven claims in its amended complaint. Count 1 is for tortious interference with prospective business relationships. Count 2 is for trade libel, while count 3 is a Lanham Act claim for unfair competition under 15 U.S.C. § 1125(a). Count 4 is for conspiracy to injure business or reputation under Wis. Stat. § 134.01. Counts 5 and 6 are for illegal restraint of trade under Wis. Stat. § 133.03 and 15 U.S.C. § 1 (Sherman Act). The sole acts giving rise to these first six claims are the sending of the infringement letters in May 2002. Count 7 seeks a declaratory judgment that Sknowbest's patent is invalid and/or that PJS does not infringe or induce others to infringe the patent.

## II. Personal Jurisdiction

■ DeLanghe is the CEO and owner of DEI, and Meacham is (or was) the CEO and owner of Sknowbest. (Am. Compl.¶¶ 3, 5.) Both move for dismissal under Rule 12(b)(2) for lack of personal jurisdiction. They grant that their respective corporations (Sknowbest and DEI) are subject to jurisdiction in Wisconsin, but protest that neither of them, individually, have minimum contacts with Wisconsin. They argue that the only contact plaintiff alleges-conspiracy to cause litigation threat letters to be sent into the state of Wisconsin-is insufficient for two reasons. First, they did not even send the letters (Sknowbest's attorney did) and they cannot be deemed thereby to have consented to jurisdiction in Wisconsin. Second, even if that act can be imputed to them, it is insufficient to establish minimum contacts with the forum state.

Once the issue of jurisdiction is raised, the plaintiff has the burden of demonstrating the existence of personal jurisdiction under the state's long-arm statute. *See Logan Productions, Inc. v. Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir.1996). This burden, however, is not a heavy one, as plaintiff need only make a prima facie showing of personal jurisdiction. *See Johnson Worldwide Assoc., Inc. v. Brunton Co.,* 12 F.Supp.2d 901, 906 (E.D.Wis.1998). Once such a showing has been made, the court must determine whether the assertion of jurisdiction over the defendant would comport with the requirements of due process. *Logan Productions, Inc.,* 103 F.3d at 52. As to the second prong of the analysis, it is the burden of the defendant challenging personal jurisdiction to establish that its assertion in this case would violate due process. *Id.*

In this case, plaintiff is silent as to what if any provision of Wisconsin's long-arm statute permits the assertion of jurisdiction over the two individual defendants. Instead, relying on *Allen–Bradley Co., Inc. v. Datalink Technologies, Inc.,* 55 F.Supp.2d 958 (E.D.Wis.1999), and *Wayne Pigment Corp. v. Halox,* 220 F.Supp.2d 931 (E.D.Wis.2002), it contends that the entire question of personal jurisdiction is reducible to the due process analysis. But plaintiff reads the cases it cites too broadly. Those cases make clear that where the basis of jurisdiction under the long-arm statute is clear, the court's focus is on due process. Neither case stands for the proposition, however, that the assertion of some basis of personal jurisdiction under the state's long-arm statute is not required in the first instance.

Upon reviewing Wisconsin's long-arm statute, Wis. Stats. § 801.05, plaintiff's silence becomes even more understandable, for none its provisions appear applicable to the facts of this case. The only subsection that comes close is (4), which is entitled "Local Injury; Foreign Act. It permits the exercise of jurisdiction

In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either

(a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."

Although a liberal reading of plaintiff's amended complaint might allow one to conclude that it alleges that the individual defendants caused injury in the state by an act performed outside the state, there are no facts alleged from which one could find that either of the alternative second elements is met. There is no suggestion that either individual defendant carried on solicitation or service activities in Wisconsin, or that they processed, manufactured or serviced products, materials or things that were used or consumed in this state in the ordinary course of trade. Thus, § 801.05(4) does not apply.

Plaintiff cites *Oxmans' Erwin Meat Co. v. Blacketer,* 86 Wis.2d 683, 273 N.W.2d 285 (1979), in support of its contention that this court has personal jurisdiction over the individual officers of the defendant corporations. But while that case supports their contention that corporate agents may be personally liable for tortious acts performed in the scope of their agency, it provides no support to their claim that this court has jurisdiction over the individual defendants in this case. In Oxmans', the individual defendant was present in the state when he was served. Of even greater significance to the court in that case was that he had more than forty business

meetings with the plaintiff in the state, and it was at one such meeting that he had allegedly made the fraudulent representations that were the subject of the action. Thus, long-arm jurisdiction over the defendant in *Oxmans'* clearly existed under § 801.05(1) and (3). In this case, by contrast, there is no suggestion that either individual defendant ever came to Wisconsin in connection with the subject matter of this action or for any other purpose.

■ Because plaintiff has failed to establish any basis for the exercise of personal jurisdiction over the individual defendants under § 801.05, it is not necessary to proceed to the second prong of the analysis, that is, whether the assertion of jurisdiction comports with due process. *Pavlic v. Woodrum,* 169 Wis.2d 585, 593, n. 3, 486 N.W.2d 533 (Ct.App.1992). I also note, however, that plaintiff's attempt to assert jurisdiction over the individual defendants fails under this prong of the analysis as well.

Due process allows a court to exercise personal jurisdiction over an out-of-state defendant only if that defendant has "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The concept of minimum contacts protects such a defendant from having to litigate in a distant forum and allows the defendant to reasonably anticipate where he may be haled into court. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Thus, there must be "some act by which an out-of-state defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

In more recent cases, the courts have discussed two types of personal jurisdiction: specific and general. Specific jurisdiction arises out of or relates to the defendant's specific contacts at issue. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), and *RAR, Inc.v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir.1997). General jurisdiction applies when a defendant's contacts with the forum state are "continuous and systematic." *International Medical Group, Inc. v. American Arbitration Ass'n, Inc.,* 312 F.3d 833, 846 (7th Cir.2002). Plaintiff admits that only specific jurisdiction is at issue here, as its "claims arise out of a single course of conduct," namely, the sending of the notice letters. (Pl. Br. at 20.)

While plaintiff's burden is a light one, I find that the sending of the notice letters is too fine a thread on which to hang personal jurisdiction. Even accepting the plaintiff's assertions as true-that the individual defendants conspired to direct Sknowbest's attorney to send the notice letters-this does not suffice as "minimum contacts." In assessing the due process requirements in a patent case, I apply the law of the Federal Circuit. *Allen–Bradley Co., Inc. v. Datalink Technologies, Inc.,* 55 F.Supp.2d 958, 960 (E.D.Wis.1999). The Federal Circuit clearly would not find personal jurisdiction here, having held that "a patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.,* 148 F.3d 1355, 1361 (Fed.Cir. 1998). In that case, the defendant had sent three warning letters, but the court found no jurisdiction:

> Shortly after receipt of the third letter, Red Wing filed its declaratory judgment claim. As this court has stated before,

cease-and-desist letters alone do not suffice to justify personal jurisdiction. Specifically, such letters cannot satisfy the second prong of the Due Process inquiry. Standards of fairness demand that HHI be insulated from personal jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights. HHI's three letters alone do not create personal jurisdiction in Minnesota.

*Id.* Since plaintiff admits that this "single course of conduct" is the sole basis for personal jurisdiction, I must find against plaintiff on this point. Nor does alleging a conspiracy to cause the threat letters to be sent to Wisconsin strengthen their case. Indeed, it weakens plaintiff's argument inasmuch as it acknowledges that the defendants are one additional step removed from actually sending the notice letters. Accordingly, claims against defendants Meacham and DeLanghe will be dismissed under Rule 12(b)(2).

### III. Dismissal of Damage Claims Under Rule 12(b)(6)

■ In deciding a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), I accept all well-pleaded factual allegations in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor. *Cleveland v. Rotman,* 297 F.3d 569, 571 (7th Cir.2002). Rule 12(b)(6) will be invoked to dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. *Cook v. Winfrey,* 141 F.3d 322, 327 (7th Cir.1998)(quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

In seeking dismissal of all of plaintiff's damage claims, defendants rely on so-called *Noerr–Pennington* immunity.[1] This doctrine, which was originally limited to the antitrust arena, shielded a citizen's actions to petition the government (including courts) from antitrust liability. But, like many judicially created doctrines, *Noerr–Pennington* immunity has evolved into a protean doctrine with unclear boundaries and uncertain applicability, having been extended by courts to immunize individuals from § 1983 liability, state tort claims, and RICO actions, among others. And, in addition to protecting petitions to the government through the court system from many kinds of liability, the doctrine has been extended to protect acts reasonably related to the petitioning (litigation) process.

■ The *Noerr–Pennington* doctrine is based on Sherman Act considerations as well as the First Amendment right to petition the government. "[P]arties may petition the government for official action favorable to their interests without fear of suit, even if the result of the petition, if granted, might harm the interests of others." *Tarpley v. Keistler,* 188 F.3d 788, 794 (7th Cir.1999). As already noted. petitioning the government includes filing lawsuits in court. Defendants contend that the concept of petitioning the courts has generally been viewed broadly and has encompassed such actions as are "reasonably and normally attendant upon protected litigation." *See, e.g., Matsushita Elecs. Corp. v. Loral Corp.,* 974 F.Supp. 345, 359 (S.D.N.Y.1997) (extending immunity to infringement warning letters sent to customers of defendants) (quoting *Coastal States Marketing, Inc. v. Hunt,* 694 F.2d 1358, 1367 (5th Cir.1983) (citing cases)); *Ther-*

---

**1.** The doctrine takes its name from *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

*mos Co. v. Igloo Products Corp.*, 1995 WL 842002, at *4–5 (N.D.Ill., Sept.27, 1995) (extending immunity to cease and desist letters sent to alleged infringers). Thus, defendants characterize the infringement letters sent by Sknowbest's counsel as being reasonably related to the petitioning of the court in an infringement action and therefore deserving of *Noerr–Pennington* immunity.

Plaintiff, however, relies on the Tenth Circuit, which has indicated its skepticism of the application of *Noerr–Pennington* to private correspondence, finding that "purely private threats do not constitute a petition to the government". *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 886 (10th Cir.2000)(en banc). In that case, a company (Cardtoons) undertook to produce parody baseball cards, which the Major League Baseball Players Association claimed violated the publicity rights of its players. *Id.* To thwart the production of these cards, the Association sent cease and desist letters both to Cardtoons, the producer of the cards, and Champs Marketing, the printer of the cards. *Id.*

The *Cardtoons* court observed that the appellate cases upholding immunity for pre-litigation threat letters did so "based upon *both* the Sherman Act and the right to petition." *Id.* at 890. Thus, while it did not question the application of *Noerr–Pennington* outside of antitrust, it cautioned that such immunity was based solely on the right to petition and not on any of the Sherman Act considerations originally announced by the Supreme Court. *Id.* at 889. In *Cardtoons*, therefore, which was not an antitrust (nor a patent) case, the court was unwilling to extend the right to petition as far as a "letter from one private party to another private party," a missive that was never sent to the government. *Id.* at 892.

The case before me, however, is a patent case. That fact is significant. Patent law requires a notice of infringement to be sent in order to recover damages, unless the patented item is clearly marked. Under 35 U.S.C. § 287(a), "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." 35 U.S.C. § 287(a). Written notice to an infringer "shall specify the patented process alleged to have been used and the reasons for a good faith belief that such process was used. The patent holder shall include in the notification such information as is reasonably necessary to explain fairly the patent holder's belief ..." 35 U.S.C. § 287(b)(5)(B). As the Federal Circuit has noted, "[t]he requirement of actual notice under § 287(a) is designed to assure that the recipient knew of the adverse patent during the period in which liability accrues, when constructive notice by marking is absent." *SRI Intern., Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1470 (Fed.Cir.1997).

The distinction between patent and other kinds of litigation was highlighted by the district court in *Keystone Retaining Wall Systems, Inc. v. Rockwood Retaining Walls, Inc. et al*, 2001 WL 951582 at *10–11 (D.Minn., Aug.22, 2001). The court in *Keystone* found that, "[u]nlike *Cardtoons*, where the letters threatening litigation were not required, the notice requirements of 35 U.S.C. § 287 put Keystone's actions within the ambit of immunized activity under the *Noerr–Pennington* doctrine." *Id.* at *11. Thus, in the sense that the patent laws explicitly sanction and require notice letters to be sent in some situations, these letters cannot be seen as "purely private threats" outside the realm of the right to

petition the government. *Cardtoons*, 208 F.3d at 886. They are more properly described as actions taken by patent owners as a step in securing their rights in the event of future litigation. As such, such letters are "reasonably and normally attendant upon protected litigation." *Coastal States Marketing*, 694 F.2d at 1367.

More importantly, the Federal Circuit, which has exclusive jurisdiction over appeals in patent cases, has held that a patentee "has the right to ... enforce its patent, and that includes threatening alleged infringers with suit." *Zenith Electronics Corp., et al. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed.Cir.1999), quoting *Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1538 (Fed.Cir.1985). Although *Zenith's* treatment of the issue was in terms of statutory preemption, as opposed to immunity under *Noerr–Pennington*, the result is the same. A patent holder who sends a cease and desist letter to persons believed to be infringing is entitled to some protection from liability for damages resulting therefrom.

■ But the protection afforded is not unlimited. No one would seriously argue that *any* act of petitioning the government, and the marketplace notification attendant to it in patent cases, is *ipso facto* immune from any claims that may arise from such acts. Were that the case, trade libel could occur and be immunized merely because the libelous statements were styled as a patent infringement notice, regardless of whether there was any good faith belief that infringement was occurring. Likewise, one could tortiously interfere with

business relationships merely by attacking a competitor in a public letter to one's local state representative. Thus, just as the First Amendment does not protect libelous or fraudulent speech, neither does it protect bad faith, or "sham" petitions to the government.

In *Zenith*, the Federal Circuit held that a patentee was not shielded from liability for unfair competition under the Lanham Act for marketplace statements about potential infringement where such statements were made in bad faith. And "to avoid patent law preemption of such state law tort claims," the Court held, "bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." 182 F.3d at 1353–55. Although the *Zenith* Court did not specifically define bad faith, it did note that "if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." [2] 182 F.3d at 1354.

Similarly, in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), the Supreme Court addressed the scope and meaning of the "sham" exception to *Noerr–Pennington* immunity. The Court outlined a two-part definition of sham litigation. First, the lawsuit must be "objectively baseless," in that "no reasonable litigant could realistically expect success on the merits." *Id.* at 60, 113 S.Ct. 1920. Second, if such a

**2.** Ultimately, whether analyzed under *Zenith* or *Noerr–Pennington*, the policy question involves a balancing of the interests noted throughout this opinion. That is, the issue comes down to a determination of which party should bear the loss that results when a patentee incorrectly asserts its patent rights. The present state of the law, at least as declared by the Federal Circuit, is that the loss

falls on the innocent competitor, absent a showing of bad faith on the part of the patentee, even when the assertions are not made in the context of pending litigation. While there may be good reason to question such a rule, given that the patentee is presumably in the best position to investigate the matter before alleging an infringement, I conclude that *Zenith* is controlling.

lawsuit is objectively baseless, courts should focus on the subjective motivation for bringing the lawsuit. If the motive is "an attempt to interfere directly with the business relationships of a competitor," it should be deemed to be a sham lawsuit and undeserving of *Noerr–Pennington* immunity. *Id.*

From the foregoing, it follows that the defendants are entitled to immunity from liability on plaintiff's damage claims unless plaintiff has alleged and ultimately proves that they were acting in bad faith in sending the Second May 2002 Letter; in essence, that the patent infringement claim was a "sham." Noting that its amended complaint does allege that the defendants were acting in bad faith in sending the letter (Am.Complt., ¶ 47), plaintiff contends that defendants' motion should be denied. But while one paragraph of the amended complaint does assert that the defendants acted in "bad faith," other paragraphs raise doubt as to what plaintiff means by the term.

For example, nowhere in the amended complaint does plaintiff allege that each of the defendants knew that the '110 Patent was not valid. Although plaintiff asserts in its brief that "Defendants knew that the '110 Patent was worthless, invalid and unenforceable," (Pl. Br. at 4), its amended complaint comes no closer than to allege that the statement in the May 2002 Letter that channel members made by plaintiff infringed on the '110 Patent was false, that defendants "failed to exercise reasonable care in determining the truth of the statements contained in the Second May 2002 Letter," and that "two or more of the defendants believed the '110 Patent was

invalid, unenforceable, or worthless ...." (Am. Complt. at ¶¶ 34, 36, and 50.)

■ These allegations are not sufficient to show bad faith. They do not support even the inference that each of the defendants had the requisite knowledge and intent to fit within the exception. The allegation that "two or more of the defendants" acted with the belief that the '110 Patent was "invalid, unenforceable, or worthless" is particularly curious. Without some specification as to which two or more of the five named defendants are meant, it provides no assistance in determining which, if any, of the defendants possessed the knowledge necessary to deprive them of the immunity otherwise afforded under *Zenith* and *Noerr–Pennington*. A fair reading of the allegation is that as many as three of the defendants did not act under such a belief. Neither the defendants nor the court should have to guess as to which defendants may be liable. A claim should not be stated as a multiple choice question.[3]

Although this is only the pleading stage of the proceeding, I conclude that the failure to plead sufficient facts to show that the defendants' conduct was in bad faith constitutes grounds for dismissal. Such dismissal, however, should not be with prejudice. Because it appears from its brief that plaintiff may be able to allege sufficient facts to come within the "sham" exception to the immunity otherwise available to defendants, they will be granted leave to amend. *See* Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1357, at 360–61 ("A dismissal under Rule

---

3. This same pleading defect is also fatal to plaintiff's three conspiracy claims, counts IV, V and VI. Although it takes only two or more persons to enter into a conspiracy, in order to state a claim for conspiracy against any one individual, there must be an allegation that he

or she is one of the two or more. *See Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir.1991)("[A] whiff of the alleged conspirators' assent cannot await discovery but must be apparent in the complaint.")

12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint.")

Finally, based upon the agreement of the parties that Powermadd, Inc., is not a separate corporate entity but simply a business name for DEI, it too will be dismissed from the action. Costs will await the outcome of the action.

Therefore, for the reasons stated herein, **IT IS ORDERED** that:

Defendant Ernest DeLanghe's motion to dismiss (Docket # 22) is **GRANTED;**

Defendant Meacham's motion to dismiss (Docket # 17) is **GRANTED;**

Defendant Sknowbest's motion to dismiss all affirmative claims (Docket # 15) is **GRANTED;**

Defendant Powermadd, DeLanghe and DEI's motion to dismiss (Docket # 26) is **GRANTED;** and

Defendant Powermadd's motion to dismiss (Docket # 28) is **GRANTED;**

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file a second amended complaint consistent with this Decision and Order.